## Noe et al. v. Akridge.

April 26, 1949.

Vernon Shuffett and T. L. Burress for appellant.

Fred Faulkner, W. F. Milby and C. O. Milby for appellee.

OPINION OF THE COURT BY JUDGE HELM—Affirming.

Appellants, T. B. Noe and Charles Noe, prosecute this appeal from a judgment enjoining them from trespassing upon the lands of appellee.

Appellee, Less Akridge, filed a petition seeking an injunction and damages against appellants for trespassing upon a strip of land 50 feet wide fronting on highway 61 at Summersville in Green County and extending back a distance of 51 poles and 4 feet. Appellee alleges that this is a part of a tract of about 9 acres conveyed to him by deed of W. F. Larimore and others, heirs of L. E. Larimore, dated November 7, 1947.

Appellants, as a defense to plaintiff's petition, asked for a reformation of the deed to appellee.

Appellee, Akridge and appellant, T. B. Noe, purchased adjoining tracts of land at a sale conducted by the T. S. Curry Realty Company for the Larimore heirs on November 7, 1947. The Larimore heirs are children and heirs of a deceased sister of the appellant, T. B. Noe. Appellants named these heirs as defendants in their answer, counterclaim and cross-petition. The heirs in their answer to the cross-petition, in which they are represented by the attorneys who represent appellants in this action, say that they "are able, ready and willing to correct the deeds as desired by * * * T. B. Noe and Charles Noe and * * * say said deed should be corrected and reformed." T. L. Burress, one of the attorneys for appellants, was clerk of the sale. The Larimore heirs had an engineer divide their property into tracts and that part of it facing on the highway into lots. He prepared a map and had blueprints made and distributed at the sale. Mr. Burress kept a record of the sales and prepared the deeds, which were signed by the Larimore heirs. One of the deeds was delivered to appellee, Akridge, and one to the appellant, T. B. Noe. The deed to Akridge included all of tract 3 and the lots in front of it facing on the highway. The deed to appellant, Noe, included all of tract 4 and all of the lots in front of it facing on the highway.

Noe later conveyed a half interest in the lands conveyed to him to his son, the appellant, Charles Noe. The description given in that deed was the same as set out in the deed of the Larimore heirs to T. B. Noe.

It is admitted by the parties, by their pleadings and by their testimony, that there is no conflict in the descriptions set out in the deeds of these parties and that the lines of both deeds coincide. Appellants contend that the description in appellee's deed by mistake includes the 50 foot strip in controversy and that the appellant's deed by mistake omits the 50 foot strip from their description. On this issue the case was by agreement of the parties heard on oral proof by the court. After viewing the premises and hearing the testimony offered by the parties, the Judge of the Green Circuit Court delivered a well considered opinion, which we adopt. This opinion is as follows:

"Plaintiff's petition charges that the defendants,

T. B. Noe and Charles Noe, are trespassing upon a 50 foot strip of land belonging to the plaintiff by erecting a fence upon same and that they threaten to continue to do so and asks for damages and an injunction. It appears that a tract of land belonging to the heirs of W. E. Larimore, deceased, was subdivided and sold at public auction on or about November 7, 1947, and that at the sale the plaintiff and defendant, T. B. Noe, bought adjoining tracts or parcels of the original tract or boundary. Deeds bearing the same date of November 7, 1947, were executed and delivered by the heirs to the respective purchasers. It is admitted that the plaintiff's deed embraces in the description the strip of land in controversy and that the description in the deed to the defendant, T. B. Noe, does not include it. In the answer of T. B. Noe and Charles Noe, they deny the allegations of the petition and also counterclaim against the plaintiff and cross-petition against the heirs at law of said W. E. Larimore, alleging that by mistake the 50 foot strip of land was included in the deed to plaintiff and omitted from the deed to T. B. Noe by mistake and ask for a reformation of the deeds.

"Without going into details as to the evidence, I am of the opinion that the evidence is not sufficient to authorize the court to reform the deeds. The cases cited under Key Nos. 19 and 20, Reformation of Instruments, Kentucky Digest, Volume 16, hold that before this relief can be granted the mistake must be shown to be mutual or there must be mistake on one side and fraud on the other. The evidence, in my opinion, does not show that there was a mutual mistake. In fact, the counterclaim does not allege that the mistake was a mutual mistake and there is no claim of fraud in either pleadings or proof. The sale of the tract which plaintiff bought was made at the mouth of a lane shown on the blueprint introduced in evidence, the lane forming the southeastern boundary of the tract purchased by plaintiff. At the southwestern corner of this tract a barn was located, but its location is not indicated on the blueprint. Defendants claim that the front line or southwestern boundary of the tract sold plaintiff was to run from the lane to the 'first stob beyond the barn,' and that it was so announced at the time of the sale. Plaintiff claims that he understood he was bidding on tract No. 3, shown

on the blueprint, and the lots in front of it and that he heard nothing said about the 'first stob beyond the barn.' The agent for the sellers had these blueprints prepared as is shown by the blueprint itself and the proof discloses that a number of them were in the hands of the crowd during the sale, though Mr. Kessler, the auctioneer, testified that the announcement was made that the sellers reserved the right to go by the blueprint or disregard it.

"If plaintiff bought tract No. 3 and the lots in front of it, then the description in his deed is correct. If he bought only to the first stob beyond the barn, then there is included in his deed a 50 foot strip which should have gone to the defendant, T. B. Noe. From the evidence it is entirely possible that the minds of the parties, the purchaser and the agent of the sellers did not meet. If so, this afforded grounds for a rescission of the contract or sale, not for reformation of the deed. That there was some misunderstanding is established by the preponderance of the testimony, but I am reasonably sure that this misunderstanding arose from the fact that the location of the barn mentioned in evidence was not shown on the blueprint. The evidence indicates that the agent for the sellers, the auctioneer and the clerk of the sale thought that the barn was located on the last lot, from the point where the sale was held, which fronted on tract No. 3, when in fact it was on the next to the last of these 50 foot lots. The case for defendants is based on the contention that at the time of the sale it was announced that the front lines of the tract being offered ran from the lane to the 'first stob beyond the barn.' A number of witnesses for plaintiff testified to hearing the announcement. Plaintiff and a number of his witnesses deny hearing any such statement, and plaintiff contends that he understood from what was said and done that he was buying tract No. 3 shown on the plat and the lots in front of it.

"The most convincing evidence sustaining the contention of plaintiff is that of Mr. Burress, one of the attorneys for the defendants, who was clerk at the sale. He testified that he had one of the blueprints at the sale and that he used this to indicate the parcels of the land purchased by the respective buyers by drawing lines on

the plat and by writing in the names of the purchasers and the amount of the bids. An inspection of this blueprint used by Mr. Burress, which was introduced in evidence, indicates that the plaintiff purchased all of tract No 3 and the ten (10) fifty foot lots in front of it and that the defendant, T. B. Noe, purchased tract No. 4 and the seventeen (17) lots in front of it. He followed this up by drawing deeds to the respective parties carrying this into effect. Certainly, from what the clerk at the sale heard and saw, he thought that plaintiff purchased tract No. 3 and the ten lots in front of it, just what he embraced in the description written into plaintiff's deed. If so, then the plaintiff was justified in believing from what he heard and saw that he was purchasing just what was described in his deed.

"Without undertaking to cite any of the numerous cases, a reference to Volume 16, Kentucky Digest, under Reformation of Instruments, Key No. 45, discloses the rule to be that the evidence to warrant reformation must be 'clear, convincing and satisfactory,' 'beyond reasonable controversy' or 'so clear, decisive, explicit and satisfactory as to convince the chancellor beyond all reasonable controversy.' In my opinion the evidence in this case does not measure up to the required standard. Further, it appearing from an inspection of the plat that if this strip is taken off the tract of land conveyed to plaintiff, he probably would not have the acreage set out in his deed and which, the proof indicates, was announced at the sale as being embraced in the tract being sold.

"For the reasons set out, I am of the opinion that the counterclaim should be dismissed and that defendants should be enjoined from trespassing on the lands described in plaintiff's deed. There is no proof of any damage and while plaintiff is probably entitled to nominal damages, a judgment for costs will afford adequate relief."

The testimony, as the above opinion and the well prepared briefs of counsel point out, is conflicting. A finding or decree of the judge or chancellor on conflicting evidence will not be disturbed, unless clearly erroneous, or against the preponderance of the evidence. West's Kentucky Digest, Appeal and Error, Key 1009

(3). We find no reason to disturb the judgment of the chancellor.

The judgment of the Circuit Court is affirmed.