**STAGG v. GIBSON et al.**

Court of Appeals of Kentucky.

June 4, 1954.

L. C. Lawrence, Jamestown, and Stanley G. Lemon, Liberty, for appellant.

Moore & Pittman, Oliver Popplewell, Liberty, and Fred Faulkner, Campbellsville, for appellees.

CAMMACK, Justice.

This is an appeal from a judgment in an action wherein the claim of Timothy Gibson and his associates against the defendants, Jack Burris and W. L. Stagg, for the reformation of a deed from Stagg to Burris was dismissed. Stagg, in his answer, joined in with the plea of Gibson and his cograntees. Gibson and his cograntees' claim for damages against Stagg was transferred by the chancellor to the equity docket for the determination of damages. Stagg has appealed from a judgment against him. He contends there was sufficient proof of a clear and convincing nature to show a mistake on the part of the person preparing the deed to warrant its reformation.

In March, 1947, Stagg conveyed one acre of land on the east side of Carpenter Creek in Casey County to Jack Burris. This deed was drawn by Stagg's attorney and delivered to Burris by Stagg. The deed called for the west bank of Carpenter Creek to the center of Carpenter's Lane, thereby conveying the creek bed and its west bank to Burris. In February, 1949, Stagg sold his farm on the west bank of the creek at public auction to Timothy and Birdie Gibson and Elmer and Velma Elliott. The deed called for the west bank of Carpenter Creek. In 1950, Gibson was fencing down to the creek when Burris gave him notice to stop because he did not own to the creek. Gibson and the other grantees filed suit asking that the deed from Stagg to Burris be reformed so as to read to the east bank of Carpenter Creek, and if this could not be done, then to allow them $3500 in damages for Stagg's failure to convey all of the land sold at public auction.

Stagg introduced evidence showing that Burris approached him prior to March, 1947, and asked if he would sell the one acre and the west bank of Carpenter Creek. He told Burris he would sell the one acre but not his water rights and that later he decided to sell the one acre to Burris. He went to his attorney, who had represented him for many years, and

asked him to draw up a deed to the property. He asked the attorney if he needed a survey run on the land. The attorney told him that he would take care of the matter himself. When the deed, which he did not read, was prepared, Stagg took it to Burris, who paid him $1000. The deed gave Burris the right to construct a wall on the east bank of the creek so as to prevent the high water from flooding his land. This, Stagg contends, goes to show that the part of the deed giving Burris the west bank was a mistake made by the writer of the deed. Later Burris asked him for permission to clean out the creek bed with a bulldozer. He gave his consent and also paid one-half of the cost. In February, 1939, he sold the remainder of his farm at public auction, and it was announced in the presence of Burris that the land being sold included the water rights on Carpenter Creek. When this deed was made it excluded the property previously sold to Burris. Stagg's evidence is substantiated by Gibson and his co-grantees, the auctioneers, and also others who attended the auction.

Burris' evidence showed that, when he approached Stagg about buying the one acre and the west bank, Stagg refused. He then told Stagg if he decided to sell the west bank along with the one acre to let him know; and that some time later Stagg gave him a deed, which he read at the time to see if it conveyed to him the west bank, which it did. He would have refused to accept the deed otherwise. Upon receiving the deed he had it recorded. Burris admits that he attended the auction, but denies that the auctioneers made any statement about selling to the east bank of Carpenter Creek. Charles Asberry and Robert Frost were both present at the auction and they said the auctioneer excluded the land sold to Burris. Oliver Popplewell, an attorney for Burris, testified that Mr. Thomas and Mr. Cochran, the men who conducted the auction, told him there was nothing said about the east bank being sold, but that it was announced that the land sold to Burris was excluded.

Before a court is authorized to reform a deed on the ground of mistake it must be shown that the mistake was mutual or there was a mistake on one side and fraud on the other. Noe v. Akridge, 310 Ky. 107, 220 S.W.2d 93. In the case at bar the evidence does not show a mutual mistake. Furthermore, there is no claim of fraud.

The rule we follow in reforming an instrument is that the evidence must be clear, convincing and satisfactory, beyond reasonable controversy. In viewing the record before us we fail to find sufficient evidence to meet the test required to reform a deed.

Judgment affirmed.